UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

THOMAS P. KOOLEN          :
                          :
     v.                   :     C.A. No. 10-050S
                          :
MORTGAGE ELECTRONIC       :
REGISTRATION SYSTEMS,     :
INC., et al.              :

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

Pending before the Court for a report and recommendation (28 U.S.C. § 636(b)(1)(B); LR Cv 72) is the Motion to Dismiss filed by Defendant Ablitt Scofield, P.C., formerly known and sued herein as Ablitt Law Offices, P.C., ("Ablitt"). (Document No. 28). The Motion was filed on May 10, 2010. Pursuant to a stipulation extending the date to oppose the Motion (Document No. 34), Plaintiff filed his Opposition to Ablitt's Motion to Dismiss on June 4, 2010. (Document No. 33).

**Background**

Plaintiff commenced this pro se action in Providence County Superior Court in late 2009 primarily seeking to enjoin a pending mortgage foreclosure. His original Complaint was nearly forty pages in length and sued several entities apparently involved in the originating and servicing of a mortgage on property owned by Plaintiff. (Document No. 1-1). The case was removed to this Court on February 4, 2010 and, on March 2, 2010, Plaintiff was Ordered to file an Amended Complaint in compliance with Fed. R. Civ. P. 8 and 10. (Document No. 11).

Plaintiff filed his Amended Complaint on May 3, 2010. (Document No. 26). Ablitt responded with the instant Motion to Dismiss.

Plaintiff alleges the following facts in his Amended Complaint which are accepted as true for purposes of Ablitt's Motion to Dismiss. In October 2006, Plaintiff entered into a Mortgage Agreement with two Defendants, Mortgage Electronic Registration Systems, Inc. ("MERS") and American Brokers Conduit ("Conduit"), on property located in Warren, Rhode Island (the "Property"). (Document No. 26, Factual Background, ¶ 2). At the time of the Agreement, Plaintiff informed MERS and Conduit that the transaction was "highly speculative." (Id. at Factual Background, ¶ 4 and Count I, ¶ 1). MERS and Conduit assured Plaintiff that there would be no "rush to foreclose" in the event of late payments but that such a representation could not be "written down." (Id. at Factual Background, ¶ 4 and Count I, ¶ 1). It was an "express term" of the Agreement that MERS and Conduit would not adhere to the written terms contained in the mortgage, but would instead forbear from foreclosing while Koolen was making interest-only payments even if he was in arrears. (Id. at Count I, ¶ 1). In contravention of this understanding, MERS and Conduit pressured Plaintiff to pay when he was late with mortgage payments. (Id. at ¶ 2).

In May 2008, MERS allegedly assigned the note and mortgage obligation to American Home Mortgage Servicing, Inc. ("AHMSI"), but never informed Plaintiff. (Id. at Factual Background, ¶ 2). This failure "mislead[ ] [Plaintiff] as to the state of his compliance with his obligations and depriv[ed] him of the opportunity to maintain compliance." (Id. at Count IV, ¶ 1). "The net effect of these shenanigans was that [Plaintiff] was placed in an arrearage situation

that caused the institution of these foreclosure proceedings." (Id. at Factual Background, ¶ 5). Foreclosure proceedings were commenced in December 2009 by Beltway Capital. (Id. at Factual Background, ¶ 2). Ablitt, a law firm, is sued as the servant or agent of Beltway who commenced the foreclosure proceedings. (Id. at The Parties, ¶ 7 and Count V(b), ¶ 1).

**Discussion**

Plaintiff brings several state common law claims against Ablitt: Count V(b) (Tortious Interference with Contractual Relations), Count VI (Negligence), Count VII (Civil Conspiracy), Count IX (Intentional Infliction of Emotional Distress) and Count X (Injunctive and Other Equitable Relief).[1] Plaintiff also broadly alleges in Count VIII that all Defendants, including Ablitt, violated "virtually every provision" of the Federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq.

As to the state law claims, Ablitt argues that it is named as a Defendant in this case solely due to its role as the attorney for Defendant Beltway. As alleged by Plaintiff, Ablitt was Beltway's "servant" or "agent" who commenced foreclosure against Plaintiff "at the request of Beltway." (Document No. 26, The Parties, ¶ 7 and Count V(b), ¶ 1). Ablitt argues, citing Credit Union Cent. Falls v. Groff, 966 A.2d 1262, 1270-1273 (R.I. 2009), that it represents Beltway and not Plaintiff and thus "owes no duty to [Plaintiff], an adverse party." In addition to the absence of any attorney-client relationship with Plaintiff, Ablitt also accurately points out that Plaintiff has not alleged any fraud on the part of Ablitt or other conduct which would support a claim

---

[1] In his opposition, Plaintiff asserts that Ablitt's legal arguments as to the sufficiency of his state law claims "overlooks the Plaintiff's contention that they are all either supplemental to or ancillary to the FDCPA claim." (Document No. 33 at p. 3). However, Ablitt does not argue that Plaintiff's state law claims are not properly before the Court under the supplemental jurisdiction statute, 28 U.S.C. § 1367. Thus, supplemental jurisdiction is not disputed and Plaintiff's argument is irrelevant.

directly against Ablitt. In fact, the "shenanigans" alleged by Plaintiff did not involve Ablitt and took place prior to the foreclosure commenced by Ablitt at Beltway's "request." Plaintiff alleges that Ablitt "knew or is by its relationship to Beltway is deemed to have known all of the allegations of fact contained in Counts I to V(a)." (Document No. 26, Count V(b), ¶ 1). Plaintiff also alleges that Ablitt was negligent by failing to "fairly and reasonably assess the wrongful impact of the conduct" of the other Defendants, including Beltway, Ablitt's client. Id., Count VI. However, Plaintiff did not, in his Amended Complaint, identify the legal basis for such duty and has not provided any such basis to the Court in his opposition to Ablitt's Motion.

Ablitt also attacks the legal sufficiency of Plaintiff's FDCPA claim. First, it argues that foreclosing on a mortgage is not debt collection activity for purposes of the FDCPA. Second, it contends that Plaintiff's conclusory allegation that Defendants' conduct violates "virtually every provision" of the FDCPA does not state a legally viable claim. (Document No. 26, Count VIII).

Relying upon Games v. Cavazos, 737 F. Supp. 1368, 1384 (D. Del. 1990), Plaintiff contends that "to the extent the mortgage servicing company receives delinquent accounts for collection it is a debt collector with respect to those accounts." However, Plaintiff does not allege that Ablitt is a mortgage servicing company. Although there appears to be conflicting authority on the issue of whether foreclosing on a mortgage is debt collection as defined in 15 U.S.C. § 1692a(6), compare Beadle v. Haughey, No. Civ. 04-272-SM, 2005 WL 300060 at *3 (D.N.H. Feb. 9, 2005) ("foreclosing on a mortgage is not debt collection activity for purposes of the FDCPA") with Muldrow v. EMC Mortg. Corp., 657 F. Supp. 2d 171, 176 (D.D.C. 2009)

(law firm that initiated foreclosure proceedings on lender's behalf was acting as debt collector within the meaning of the FDCPA), Plaintiff's FDCPA claim is simply too vague and conclusory to state a viable claim. Both in his Amended Complaint and in his Opposition to Ablitt's Motion to Dismiss, Plaintiff fails to specify which provisions of the FDCPA were violated by Ablitt and how. Instead, Plaintiff generally alleges that "all of the Defendant's conduct as set out in Counts I to VII are violations of virtually every provision of the so-called FDCPA statute and each Defendant is jointly and severally liable for each one of the civil penalties in that statute." Such generalized pleading does not put Ablitt, or this Court for that matter, on reasonable notice as to the basis for Plaintiff's FDCPA claim.

The legal arguments made by Ablitt support dismissal of it from this case and have not in any way been controverted by Plaintiff. Even giving Plaintiff the benefit of the doubt, a generous reading of his Amended Complaint makes clear that his claim against Ablitt arises solely out of the fact that it was hired by Beltway as legal counsel to commence foreclosure proceedings on property owned by Plaintiff and secured by a mortgage. Plaintiff's Amended Complaint does not allege any facts plausibly suggesting the existence of any viable legal claims against Ablitt simply because it commenced foreclosure proceedings under the circumstances outlined in the Amended Complaint. See Gagliardi v. Sullivan, 513 F.3d 301, 305-306 (1st Cir. 2008) (the factual allegations must "possess enough heft" to set forth "a plausible entitlement to relief"); and Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"). Accordingly, I recommend that Defendant Ablitt's Motion to Dismiss (Document No. 28) be GRANTED.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

  /s/   Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
June 29, 2010