UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

THOMAS P. KOOLEN                    :
                                   :
            v.                     :        C.A. No. 10-050S
                                   :
BELTWAY CAPITAL MANAGEMENT,        :
LLC, et al.                        :

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

Pending before the Court for a report and recommendation (28 U.S.C. § 636(b)(1)(B); LR Cv 72) is the Motion for Summary Judgment filed jointly by Defendants Beltway Capital Management, LLC ("Beltway"); Mortgage Electronic Registration Systems, Inc. ("MERS") and BSI Financial Services, Inc. ("BSI"). (Document No. 45). Pursuant to Local Rule Cv 7(b)(1), Plaintiff's Opposition to the Motion was due by October 25, 2010. Plaintiff filed an untimely Opposition on November 1, 2010 as well as a Motion to Stay Hearing and/or Adjudication (Document No. 50) of the Motion which has been denied by separate Order. (Document No. 52).

**Background**

Plaintiff commenced this pro se action in Providence County Superior Court in late 2009 primarily seeking to enjoin a pending mortgage foreclosure. His original Complaint was nearly forty pages in length and sued several entities apparently involved in the originating and servicing of a mortgage on rental property owned by Plaintiff. (Document No. 1-1). The case was removed to this Court on February 4, 2010 and, on March 2, 2010, Plaintiff was Ordered to file an Amended Complaint in compliance with Fed. R. Civ. P. 8 and 10. (Document No. 11). Plaintiff filed his Amended Complaint on May 3, 2010. (Document No. 26).

Plaintiff alleges the following facts in his Amended Complaint. In October 2006, Plaintiff entered into a Mortgage Agreement with MERS and American Brokers Conduit ("Conduit") on property located in Warren, Rhode Island (the "Property"). (Document No. 26, Factual Background, ¶ 2). At the time of the Agreement, Plaintiff informed MERS and Conduit that the transaction was "highly speculative." (Id. at Factual Background, ¶ 4 and Count I, ¶ 1). MERS and Conduit assured Plaintiff that there would be no "rush to foreclose" in the event of late payments but that such a representation could not be "written down." (Id. at Factual Background, ¶ 4 and Count I, ¶ 1). It was an "express term" of the Agreement that MERS and Conduit would not adhere to the written terms contained in the mortgage, but would instead refrain from foreclosing while Koolen was making interest-only payments even if he was in arrears. (Id. at Count I, ¶ 1). In contravention of this understanding, MERS and Conduit pressured Plaintiff to pay when he was late with mortgage payments. (Id. at ¶ 2).

In May 2008, MERS allegedly assigned the note and mortgage obligation to American Home Mortgage Servicing, Inc. ("AHMSI"), but never informed Plaintiff. (Id. at Factual Background, ¶ 2). Plaintiff also sues Acqura Loan Services, Inc. ("Acqura") in its capacity as "servicing agent" of AHMSI. (Id. at The Parties, ¶ 3). This failure to notify "mislead[ ] [Plaintiff] as to the state of his compliance with his obligations and depriv[ed] him of the opportunity to maintain compliance." (Id. at Count IV, ¶ 1). "The net effect of these shenanigans was that [Plaintiff] was placed in an arrerage [sic] situation that caused the institution of these foreclosure proceedings." (Id. at Factual Background, ¶ 5). Foreclosure proceedings were commenced in December 2009 by Beltway. (Id. at Factual Background, ¶ 2). BSI is sued as the "servicing agent of Beltway." (Id. at The Parties, ¶ 5). Ablitt, a law firm, was sued as the servant or agent of Beltway who commenced the foreclosure

proceedings. (Id. at The Parties, ¶ 7 and Count V(b), ¶ 1). Ablitt was dismissed from this action by Order dated July 22, 2010. (Document No. 42).

**Facts**

In support of their Motion for Summary Judgment, Defendants filed a Statement of Undisputed Facts pursuant to Local Rule Cv 56(a)(1), (2). (Document No. 46). Plaintiff has not filed his own Statements of Disputed or Undisputed Facts in response as required by the Court's Local Rules.[1] Pursuant to Local Rule Cv 56(a)(3), the facts set forth as undisputed by the movant are "deemed admitted unless expressly denied or otherwise controverted by a party objecting to the motion." Since Plaintiff has not properly responded to Defendants' Statement of Undisputed Facts, the facts proffered by Defendants are "deemed admitted" and summarized below.

Plaintiff is the owner of property located at 1-4 Libby Lane, Warren, Rhode Island (the "Property"). In 2006, Plaintiff procured a loan from Conduit in the principal amount of $315,000.00. An adjustable rate note was given by Plaintiff to the lender which is dated October 6, 2006. (Document No. 46-1). On the same date, Plaintiff signed a mortgage as a security instrument to secure the payment of the note. (Document No. 46-2). Plaintiff granted to MERS, as nominee for Conduit, a mortgage on the Property. Id. The mortgage is recorded in the Land Evidence Records for the Town of Warren, Rhode Island in Book 644, Page 322.

On June 8, 2008, the mortgagee, MERS, assigned all right, title and interest in the mortgage to AHMSI. (Document No. 46-8 at p. 1). On March 25, 2009 (but effective July 29, 2008), AHMSI assigned all right, title and interest in the mortgage to Beltway. (Document No. 46-8 at p. 2). On

---

[1] At an April 14, 2010 Show Cause Hearing, the Court notified Plaintiff of his obligation to familiarize himself and follow the applicable procedural rules including the Court's Local Rules. Further, in a June 2, 2010 Report and Recommendation, Plaintiff was again reminded that "it is his responsibility to keep abreast of the rules and his filing requirements in this case." (Document No. 31 at p. 4).

July 31, 2008, Plaintiff filed a Petition under Chapter 13 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Massachusetts. On September 5, 2008, the case was converted to a Petition under Chapter 7. Plaintiff, as Debtor in the Bankruptcy Case, indicated in his Statement of Intention that his intention was to retain the Property and he would reaffirm the debt. (Document No. 46-8 at p. 3). At the time of the filing of the Bankruptcy Petition, there were outstanding secured encumbrances against the Property as follows:

| Lien | Party | Amount | Book/Page |
|---|---|---|---|
| 1st Mortgage | AHMSI | $368,141.82 | 644/322 |
| 2nd Mortgage | AHMSI | $110,000.00 | |
| 3rd Mortgage | Jonathon D. Birs | $ 25,000.00 | |
| Total | | $503,141.82 | |

According to a Broker's Price Opinion rendered on the Property in 2008, the fair market value ("FMV") of the subject property was $385,000.00. Based upon this figure, the approximate liquidation value of the Property, calculated by deducting the estimated reasonable and necessary expenses from the FMV, was $353,684.40. The total obligation under the Note and Mortgage as of February 5, 2009 was approximately $368,141.82.

On April 10, 2009, Beltway filed a Motion for Relief from Stay in the Bankruptcy Court to foreclose on the Property. (Document No. 46-8 at pp. 4-8). At such time, Plaintiff had not made a payment on the note since late 2006 and was in arrearage in excess of $85,000.00. Plaintiff did not file an Objection to the Motion for Relief from Stay. On April 24, 2009, Beltway was granted relief from the stay by the Bankruptcy Court. (Document No. 46-8 at p. 9). Beltway retained Ablitt to conduct a foreclosure sale. On October 27, 2009, Ablitt sent Plaintiff a "Notice of Intention to Foreclose Mortgage and of Deficiency After Foreclosure of Mortgage." (Document No. 46-8 at p.

10).  The Notice provides that Beltway intended to foreclose on or after December 18, 2009 at 10:00 a.m.  Id.

On October 26, 2009, Ablitt sent to Plaintiff at the Property address a "Notice of Foreclosure Pursuant to RI ST § 34-27-4."  (Document No. 46-8 at pp. 11-12).  That document indicated that the foreclosure sale would be conducted at public auction on the premises on December 18, 2009 at 10:00 a.m.  Ablitt followed the statutory procedure in notifying the Plaintiff of the foreclosure sale and in conducting the foreclosure sale.  Just prior to the date of the foreclosure, Plaintiff initiated this action in Superior Court.  After a temporary restraining order (TRO) was issued by a Judge of the Superior Court, Beltway cancelled the foreclosure sale.  The TRO has expired, and neither the Superior Court nor this Court has issued any further injunction against foreclosure.

**Standard of Review**

When ruling on a motion for summary judgment, the court must look to the record and view all the facts and inferences therefrom in the light most favorable to the nonmoving party.  Cont'l Cas. Co. v. Canadian Univ. Ins. Co., 924 F.2d 370, 373 (1st Cir. 1991).  Once this is done, Rule 56(c) requires that summary judgment be granted if there is no issue as to any material fact and the moving party is entitled to judgment as a matter of law.  A material fact is one affecting the lawsuit's outcome.  URI Cogeneration Partners, L.P. v. Bd. of Governors for Higher Educ., 915 F. Supp. 1267, 1279 (D.R.I. 1996).  Factual disputes are genuine when, based on the evidence presented, a reasonable trier of fact could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  To win summary judgment on a particular count of the complaint, the moving party must show that "there is an absence of evidence to support" the non-moving party's claim.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  In response, the nonmoving party

cannot rest on its pleadings, but must "set forth specific facts demonstrating that there is a genuine issue for trial" as to the claim that is the subject of the summary judgment motion. <u>Oliver v. Digital Equip. Corp.</u>, 846 F.2d 103, 105 (1ˢᵗ Cir. 1988).

In this District, Local Rule Cv 56 requires that a Motion for Summary Judgment be accompanied by a Statement of Undisputed Facts, with each fact set forth in a numbered paragraph. The moving party's proffered Facts are deemed admitted unless the objecting party files a Statement of Disputed Facts, identifying the evidence establishing the dispute. <u>See</u> LR Cv 56(a)(3). In the present litigation, Defendants filed a Statement of Undisputed Facts. (Document No. 46). However, as previously noted, Plaintiff did not file a Statement of Disputed Facts and thus the facts in Defendants' Statement are deemed admitted.

**Discussion**

The moving Defendants (Beltway, MERS and BSI) contend that "the whole purpose in the Plaintiff bringing this action in the State Superior Court was to halt the foreclosure action" scheduled for late 2009. (Document No. 45-1 at p. 2). They argue that the undisputed facts make clear that Plaintiff was in default under the note and that Beltway, the assigned mortgagee, was within its rights in foreclosing. They contend that Plaintiff cannot identify sufficient facts on which to base any viable legal claims.

Plaintiff's response (Document No. 49) is woefully deficient and does not show that there are any "trial worthy" issues present in this action.

First, Plaintiff contends that because he "has had no opportunity to discover the basis for the facts asserted or to discover other material facts, [he] is unable to present by affidavit facts essential to justify his opposition." (Document No. 49 at p. 1). However, discovery closed in this case on

October 31, 2010 and Plaintiff has offered no justification for his failure to complete the necessary discovery during the eight-month discovery period. In addition, Plaintiff never moved to extend the discovery period.

Second, Plaintiff does not directly contest Defendants' assertions that he has failed to make any mortgage payments since late 2006 and is in default. Rather, he claims that Defendants have ignored "the gravaman [sic] of this complaint which is he did not know who to send the money too [sic], no one told him." (Document No. 49 at p. 3).[2] However, a close review of Plaintiff's Amended Complaint reveals that not knowing who to pay is not the gravamen of his case. The gravamen is actually a claim that the original lender gave him a verbal assurance that late mortgage payments would not result in "a rush to foreclosure." Further, Plaintiff has offered no evidence to controvert Defendants' sworn assertion through a Beltway representative that the last payment received from Plaintiff on the October 2006 note was posted in December 2006. (Document No. 45-2, Aff. of Brian Gray at ¶ 7). Plaintiff has simply offered no competent evidence indicating that he was ready, willing and able to make subsequent payments and only failed to do so because he did no know who to pay. Thus, Plaintiff's claim that the failure to notify him of the assignments of his mortgage placed him in an arrearage situation that caused the institution of these foreclosure proceedings is a red herring since it is undisputed that the first assignment from MERS to AHMSI took place in 2008 (Document No. 26-3 at p. 2) and the second assignment from AHMSI to Beltway

---

[2] In Count III (Breach of Contract Misrepresentation Negligence), Plaintiff alleges that MERS and Conduit's failure to notify him of the assignments of his note and mortgage "together with their breaches of contract and misrepresentations constitutes negligence and breach of the statutory duty owed by MERS and Conduit to [him] pursuant to state federal and common law obligations that relate to the assignment of secured notes and mortgages." (Document No. 26 at p. 5). However, Plaintiff has never specifically identified the source of such "state federal and common law obligations" in any of his submissions to the Court.

took place in 2009 (Document No. 26-4 at p. 2) but Plaintiff's last mortgage payment was posted in late 2006. (Document No. 45-2, ¶ 7).

Third, Plaintiff has offered no evidence to support his claim that the original lender verbally agreed to "an express term" that it "would not adhere to the strict written provisions of the subject note and mortgage" regarding payment and foreclosure and would not "rush to foreclose." (Document No. 26 at pp. 3-4). Further, Plaintiff has offered no plausible explanation as to why such a verbal arrangement would not be rendered unenforceable by the statute of frauds which generally requires that mortgage transactions be in writing to be enforceable. See R.I. Gen. Stat. § 9-1-4. Plaintiff has simply offered no factual or legal support for his claim that he had an oral agreement with the original lender to modify the express terms of his note and mortgage. If this unsupported claim was allowed to proceed to trial, then any borrower in default and subject to foreclosure could attempt to stave off foreclosure by making similar conclusory allegations of oral contract modifications to the note and/or mortgage.

Finally, Plaintiff argues that Defendants "inexplicably refuse to accept that they [are] debt collectors" and violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq. However, Plaintiff does not, either in his Amended Complaint or his Opposition, specify what provisions of the FDCPA were violated by which Defendants and how. He broadly alleges in Count VIII that Defendants' conduct violated "virtually every provision" of the FDCPA and that they are "jointly and severally liable for each one of the civil penalties in that statute." (Document No. 26 at p. 8). This generalized pleading does not put Defendants, or this Court for that matter, on reasonable notice as to the basis for Plaintiff's FDCPA claim. See Gagliardi v. Sullivan, 513 F.3d 301, 305-306 (1st Cir. 2008) (the factual allegations must "possess enough heft" to set forth "a

plausible entitlement to relief"); and <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (<u>quoting</u> <u>Bell</u> <u>Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"). Although there appears to be conflicting authority on the issue of whether foreclosing on a mortgage is debt collection as defined in 15 U.S.C. § 1692a(6), <u>compare</u> <u>Warren v.</u> <u>Countrywide Home Loans, In</u>c., 342 Fed. Appx. 458, 2009 WL 2477764 (11th Cir. 2009) (per curiam) (enforcement of mortgage through foreclosure is not debt collection activity under the FDCPA) <u>and</u> <u>Beadle v. Haughey</u>, No. Civ. 04-272-SM, 2005 WL 300060 at *3 (D.N.H. Feb. 9, 2005) ("foreclosing on a mortgage is not debt collection activity for purposes of the FDCPA") with <u>Muldrow v. EMC Mortg. Corp.</u>, 657 F. Supp. 2d 171, 176 (D.D.C. 2009) (law firm that initiated foreclosure proceedings on lender's behalf was acting as debt collector within the meaning of the FDCPA), Plaintiff's FDCPA claim is simply too vague and conclusory to state any viable claim against any of the named Defendants. <u>See</u> <u>Buckley v. Bayrock Mortg. Corp.</u>, No. 1:09-CV-1387-TWT, 2010 WL 476673 at **6-7 (N.D. Ga. Feb. 5, 2010) (dismissing "vague and conclusory allegations" of FDCPA violations in a <u>pro se</u> action arising out of a foreclosure proceeding).

In addition to the instant Motion for Summary Judgment, Defendant AHMSI previously moved to dismiss Plaintiff's Amended Complaint for failure to state a claim. (Document No. 29).[3] As well as the previously discussed FDCPA claim brought against all Defendants, Plaintiff also brings the following state common law claims against AHMSI: Count IV (Breach of Contract Misrepresentation Negligence); Count V(a) (Tortious Interference with Contractual Relations); Count VII (Civil Conspiracy); Count IX (Intentional Infliction of Emotional Distress) and Count X

---

[3] AHMSI's Motion has also been referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B); LR Cv 72.

(Injunctive and Other Equitable Relief). AHMSI contends that Plaintiff does not state any viable claims against it and that it cannot, as a matter of law, be held vicariously liable for the actions of its co-Defendants (MERS and Conduit) who allegedly originated the note and mortgage and verbally agreed not to "rush to foreclose." AHMSI also argues that Plaintiff's conclusory claim as to violations of the FDCPA fails to state a claim and, as noted above, this Court concurs.

Plaintiff alleges in his Amended Complaint that MERS assigned his note and mortgage to AHMSI who subsequently assigned it to Beltway. Plaintiff does not specifically allege any affirmative "wrongdoings" by AHMSI. Rather, he alleges in Count IV that by taking assignment of his note and mortgage, AHMSI "adopted all of the breaches of contract and misrepresentations of MERS and Conduit as [its] own." (Document No. 26 at pp. 5-6). Since this Court is recommending the entry of summary judgment as to Plaintiff's claims against MERS (the alleged originator), Beltway (the assignee/forecloser) and BSI (Beltway's servicing agent), it follows that dismissal should also be recommended as to Plaintiff's attempted derivative claims against AHMSI as an alleged assignee between MERS and Beltway.

**Conclusion**

For the foregoing reasons, I recommend that Defendant AHMSI's Motion to Dismiss (Document No. 29) and Defendants MERS, Beltway and BSI's Motion for Summary Judgment (Document No. 45) be GRANTED. I also recommend that the Court enter final judgment in favor of all Defendants on Plaintiff's Amended Complaint since Plaintiff's claims against Defendant Ablitt were previously dismissed. (Document No. 42). In addition, there is no record of Plaintiff effecting service on the remaining two Defendants, Conduit and Acqura, and the 120-day period for doing so expired several months ago. Thus, pursuant to Fed. R. Civ. P. 4(m), I further recommend that

Plaintiff's claims against Defendants Conduit and Acqura be dismissed <u>sua sponte</u> without prejudice after this notice to Plaintiff and opportunity to object.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt.  <u>See</u> Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  <u>See</u> <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).


  /s/   Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
January 3, 2011